**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 06-411-C**

**DELBERT E. NORTON, JR., ET UX.,**                                                      **PLAINTIFFS,**

**V.**                                    **MEMORANDUM OPINION AND ORDER**

**CANADIAN AMERICAN TANK LINES, ET AL.,**                                   **DEFENDANTS.**

* * * * * * * * * *

This matter is before the court upon the parties' cross-motions for summary

judgment (R. 39, 40) and the plaintiff's motion in limine as to a pre-accident stroke

R. 37).   The court, having reviewed the record and being otherwise sufficiently

advised, will grant the plaintiffs' motion and deny the defendants' motion.

**I.      Background**

In the early hours of the morning of May 11, 2006, plaintiff Delbert Norton

was driving to work along Decimal Drive.  Decimal Drive passes through a light

industrial park.  Norton was on his way to his job at Lantech, where he was a

welder and team leader.  At approximately 6:00 a.m., he collided with the rear of a

tractor-trailer[1] parked at the side of the road.  The tractor-trailer had been parked

there by defendant Michel Picard, who was driving it for defendant Canadian

American Tank Lines ("Canadian").  Picard was asleep in the sleeper cab of the

---

[1]The trailer was, more specifically, a "tanker-trailer."

tractor.  At the time of the accident, another vehicle was approaching Norton from the opposite direction with its headlights illuminated.  Norton sustained severe injuries in the accident.  It is disputed whether or not he was wearing a seat belt.

Picard had arrived at Decimal Drive the night before, sometime between 9:00 and 9:30 p.m.  He intended to make a delivery to RussTech, a business in the area. Unable to make the delivery at that late hour, he parked his tractor-trailer along Decimal Drive for the night, planning to awaken early the next morning and make his delivery then.  Picard parked the tractor-trailer partly on the roadway and partly on the grassy shoulder of the roadway.  The left tires were positioned on pavement; the right tires were positioned on the grass shoulder.  The tractor-trailer extended seven feet into the roadway.  Picard placed no warning devices, such as reflective triangles or flares, in the roadway.  It is disputed whether or not the lights of the trailer were illuminated at the time of the accident.

Decimal Drive is a paved road.  It is spacious enough for one eastbound lane and one westbound lane, but it has no painted center dividing line.  The road is thirty-five feet wide, and so with Picard's trailer extending seven feet into the roadway, twenty-eight feet of road remained unobstructed.  Decimal Drive is located in Jeffersontown, Kentucky, a city existing within the boundaries of the Jefferson County-Louisville consolidated metropolitan area.

In their complaint, plaintiffs Delbert Norton and his wife Kelly Norton allege that Picard was negligent in the parking of his vehicle and that this negligence was

2

the proximate cause of Norton's injuries.  Plaintiffs allege both that Picard was negligent because he violated a statute (negligence as a matter of law) and because he breached a general duty of care (ordinary negligence).  The parties have filed cross-motions for summary judgment on the issue of whether Picard's parking violated a statute.  The defendants also seek a summary judgment that Norton's failure to wear a seat belt was a substantial factor contributing to his injuries.

## II.    Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25.  To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e).  The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    Analysis

3

A.    Liability of Defendant Canadian for Norton's Injuries.

The plaintiffs argue that Picard violated local, state, and federal statutes by parking his vehicle as he did.  The plaintiffs maintain that by violating these statutes, Picard was negligent as a matter of law.  The plaintiffs further argue that as Picard was acting on behalf of his employer, Canadian, Canadian is vicariously liable for the consequences of his negligence.  The defendants' only argument in opposition to these arguments is that Picard neither violated a statute nor breached any general duty of care.  The court therefore will first consider whether Picard violated any statute that would make him negligent as a matter of law.

The plaintiffs contend that Picard violated KRS 189.450, which provides:

> No person shall stop a vehicle, leave it standing, or cause it to stop or to be left standing upon any portion of the roadway; provided, however, that this section shall not be construed to prevent parking in front of a private residence off the roadway or street in a city or suburban area where such parking is otherwise permitted, as long as the vehicle so parked does not impede the flow of traffic.

KRS 189.450 (1).

Picard's tractor-trailer was a vehicle.  According to KRS 189.010(10), a "roadway" is "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder."  A "highway" is "any public road, street, avenue, alley or boulevard, bridge, viaduct, or trestle and the approaches to them." KRS 189.010(3).  Decimal Drive, described by both parties as a city street, meets this definition of "highway."  The parties agree that Picard

4

parked his tractor-trailer such that it extended into Decimal Drive for seven feet. Picard therefore parked it or left it standing upon a portion of a highway "ordinarily used for vehicular travel."   Therefore, according to these statutory definitions, he left it standing on a "roadway."

The second clause establishes an exception to the statute's general prohibition.  A person may stop a vehicle on the roadway in front of a private residence in a city or suburban area as long as such parking is otherwise permitted and the vehicle does not "impede the flow of traffic."  This exception does not apply to the present case.  Picard's vehicle was not parked in front of a private residence.   As described by both parties, Decimal Drive is a city street in a business or industrial area.  The undisputed facts therefore establish that Picard violated KRS 189.450.

The defendant relies on *Duff v. Lykins*, 306 S.W.2d 252 (Ky. 1957), to argue that KRS 189.450 "clearly permits vehicles to be parked on the side of the roadway in a city unless the city has prohibited parking in that location." R. 40, p.13.   According to the defendants, *Duff* established that parking on city streets is lawful unless it is expressly prohibited by the city.  The parties dispute which city's ordinances apply to Decimal Drive; the defendants maintain that the ordinances of Jeffersontown govern exclusively, while the plaintiffs argue that the more restrictive ordinances of the Jefferson-Louisville Metro government must apply. According to the defendants, the Jeffersontown ordinances do not prohibit parking

5

on Decimal Drive and therefore, guided by *Duff*, this court must find that Picard did not violate KRS 189.450.  However, the *Duff* court had before it a previous version of this statute.  The modern statute is so substantially different that *Duff* is irrelevant to the court's present inquiry.

Duff v. Lykins*, 306 S.W.2d 252 (Ky. 1957), principally concerned whether the state statute requiring that vehicles use lights at night applied when a vehicle was parked legally during the day but left parked after dark.  There are two main parts to the court's reasoning in the case.  First, the court reasoned that if a motorist may park his car lawfully in a certain place during the daylight, he should be able to leave the car there at night without its lights on. *Id.* at 254.  Second, the court observed that parking generally is permitted where it is not prohibited. *Id.* Taking these general propositions together, the court held that "a motorist properly may park his vehicle without lights on a city street unless the city has by ordinance (or lawful regulation thereunder) prohibited such parking." *Id.* at 254-55; *see also Cottrell v. Ceder*, 376 S.W.2d 536, 538 (Ky. 1964) (describing the holding of *Duff*).  The court relied in part on its reading of KRS 189.450 to provide that "in the absence of a city ordinance . . . prohibiting parking, a person may lawfully park in a proper manner or [sic] a city street in the daytime." *Duff*, 306 S.W.2d at 254.

At the time of *Duff,* KRS 189.450 used different language after the semi-colon: "provided, however, that this section shall not be construed to prevent parking off the main traveled portion of a highway or street in a city or suburban

6

area where such parking is otherwise permitted." *Id.* This "exception in the statute" was apparently added so that the statute would comport with the holding in *Kimble v. Standard Oil Co*., 30 S.W.2d 890 (Ky. 1930), an earlier case in which the same court had interpreted an earlier version of the same statute. *See id.* (discussing holding in *Kimble* that then-existing statute prohibiting parking on highways "applied only to highways outside of cities and not to city streets").[2] The court's application of KRS 189.450 in *Duff* was clearly required by the statute's broad exception for parking on roadways within a city or suburban area.

Now, however, the statute includes two additional clauses that must inform this court's interpretation.[3] First, between the phrases "parking" and "off the roadway," there now exists the phrase "in front of a private residence." Second, at the end of the exception is also the new phrase "as long as the vehicle so parked

---

[2]In 1930, at the time of *Kimble*, KRS 189.450 prohibited parking on the main traveled portion of the highway (the definition of which included city streets) with no qualifying language allowing parking on the traveled portions of city streets. The *Kimble* court, focusing on the practical realities of driving and city streets in 1930, held that the statute did not prohibit parking on the roadway in city streets and therefore "in the absence of a city ordinance controlling the subject, parking a motor vehicle on the street is not an unlawful act . . . ." *Kimble*, 30 S.W.2d at 892. The court reasoned that because "city streets are usually paved from curb to curb, and all of the street is ordinarily used for travel by motor vehicles," "[p]arking on city streets under modern conditions is necessary." *Id.* Prior to 1957, the year *Duff* was decided, the language excepting parking on city streets was added to KRS 189.450.

[3]The plaintiffs point to the additional clause "as long as . . . [the parked vehicle] . . . does not impede the flow of traffic" but do not identify the added "in front of a private residence" language as relevant. While the court is hesitant to place so much weight on a phrase of the statute not emphasized by the plaintiffs, the court finds it impossible to resolve the parties' motions without doing so.

does not impede the flow of traffic."  Together, these two phrases create an exception that is narrower than the broad exception for parking on city streets that existed at the time of *Duff*.

Absent the reasoning of *Duff* and *Kimble* that KRS 189.450 does not apply to city streets, the defendant's argument that KRS 189.450 does not apply and only Jeffersontown's city ordinances apply falls apart.  Generally speaking, "municipal ordinances must be in harmony with state laws."  *Boyle v. Campbell*, 450 S.W.2d 265, 267 (Ky. 1970).   A city does have the power to enact parking ordinances.  *See* KRS 82.082.[4]  "Under KRS 82.082, the so-called 'Home Rule' statute, municipalities may act in furtherance of a public purpose, so long as the exercise of power is 'not in conflict with a constitutional provision or statute.'" *Pierce v. Commonwealth of Kentucky*, 777 S.W.2d 926, 928 (Ky. 1989) (citing KRS 82.082(1)).  Where such conflict exists, the state statute, not the city ordinance, will be applied.  Here, there is a conflict, as the state statute prohibits parking where the city ordinance arguably does not.[5]   Furthermore, because the

---

[4]"A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes." KRS 82.082(2).

[5]The defendant points to section 70.15(B) of the Jeffersontown Traffic Code, which provides in pertinent part:

> It shall be unlawful for the operator of any vehicle to stop or park a vehicle; except in the case of emergency or in compliance with the provisions of the Traffic Code, or when directed by a police officer, or traffic sign or signal; at any time in the following places:
> . . .
> (2) Upon the main traveled portion of a highway or street where parking

8

court has determined that Picard violated a state statute, the court need not determine whether he also violated  federal regulations regarding use of lights or warning devices.[6]

When a party committing a tort violates a law, and that violation of law results in the plaintiff's injury and the injury is of the type that the law was intended to protect, then the defendant is liable according to the rule of negligence *per se*.  *See Alderman v. Bradley*, 657 S.W.2d 264, 267 (Ky. Ct. App. 1997). Kentucky has codified the negligence *per se* rule.  *See* KRS 446.070; *see also Davidson v. Amer. Freightways Inc.*, 25 S.W.3d 94, 99 (Ky. 2000).  Here, the plaintiffs maintain that Norton's injuries are of the type that KRS 189.450 was intended to prevent.  The defendants do not argue otherwise.

Due to his violation of KRS 189.450, Picard was negligent as a matter of law and his employer, Canadian, is vicariously liable for injuries caused by his negligence.

B.     The Alleged Failure of Norton to Wear a Seat Belt

The defendants argue that they are entitled to a finding that Norton's failure to wear a seat belt was a substantial factor that contributed to his injuries.

"A person shall not operate a motor vehicle manufactured after 1981 on the public roadways of this state unless the driver and all passengers are wearing a

_____

prohibitions are posted.

[6]The plaintiffs specifically argued that Picard violated 49 C.F.R. §392.22.

9

properly adjusted and fastened seat belt, unless the passenger is a child who is secured as required in subsection (3) of this section."  KRS 189.125(6).  It is undisputed that Norton was driving a Dodge pickup truck manufactured after 1981.

The defendants assert that Norton was not wearing a seat belt at the time of the accident, but they do not indicate evidence that supports their assertion.  The plaintiffs counter that Norton does not admit to failure to wear a seat belt.  The defendants state that the plaintiffs' "own expert has confirmed that no seat belt was in use at the time of the accident."  R. 52, p. 11.  The defendants do not cite a particular expert or deposition, and it is not clear to the court to which expert they are referring.  The court has reviewed the evidence submitted with the parties' motions for summary judgment, including Norton's deposition and the police report referenced by defendants' expert Dr. Alfred Bowles, and is unable to find any evidence as to whether Mr. Norton was wearing a seat belt.  It is certainly possible that such evidence was submitted to the court, but the court is unable to locate it without clearer direction from the parties.

Comparative fault can be assessed against Norton for failure to wear a seat belt, however, only if there is a finding that such failure was a substantial factor in the injuries plaintiff sustained.  *See* KRS 189.125(5)("Failure of any person to wear a seat belt shall not constitute negligence per se.").

> [I]f there is relevant and competent evidence that the plaintiff was contributorily at fault by failing to wear an available seatbelt and that such fault was a substantial factor in contributing to or enhancing the plaintiff's injuries, then the issue of the plaintiff's fault is submitted to the jury for

10

determination.  If the jury determines that the plaintiff has some degree of fault due to failure to wear a seatbelt, the liability of the parties is then determined by their respective degrees of fault.

*Geyer v. Mankin*, 984 S.W. 2d 104, 107 (Ky. App. 1998). In their motion, the defendants cite portions of Dr. Bowles's deposition that go to show that the failure to wear a seat belt contributed to Norton's injuries.  However, the plaintiffs cite different portions of the same deposition that suggest that a lack of seat belt would not have been a substantial factor.[7]  The evidence submitted by the defendants therefore does not conclusively resolve the question.  Thus, even if there were no dispute as to whether Norton was wearing a seat belt, whether any such failure was a substantial factor in his injuries would remain a question for the jury.

Three questions related to Norton's alleged failure to wear a seat belt therefore remain for a jury's consideration: (1) was Norton wearing a seat belt; (2) if not, was his lack of a seat belt a substantial factor contributing to his injuries; (3) if it was, then what percentage of fault for his injuries is attributable to his lack of a seat belt.

**IV.   Conclusion**

Accordingly,

**IT IS ORDERED**:

_____

[7]These portions were not attached by the plaintiffs and are not in the exhibit attached by the defendant.  The court found the cited portions attached to the plaintiffs' motion in limine.  R. 38, exhibits 1, 2, 3.

11

(1)     the plaintiffs'  motion for summary judgment (R. 39) is **GRANTED**;

(2)     the plaintiffs' motion to supplement additional authority (R. 50) is **GRANTED**;

(3)     the defendant's motion for summary judgment (R. 40) is **DENIED**;

(4)     the plaintiffs' motion in limine as to a pre-accident stroke (R. 37) is **GRANTED** by agreement, as to the defendant's case in chief.

(5)     the pre-trial conference scheduled for 10:00 a.m. on January 20, 2009, remains scheduled.  The jury trial currently scheduled for February 24, 2009, is now a trial on the specific issues indicated above.


Signed on  January 12, 2009

**Jennifer B. Coffman, Judge**
**United States District Court**